UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

REGIONS BANK,

an Alabama Banking Corporation,

    Plaintiff,

vs.

CHICAGO TITLE INSURANCE COMPANY,
a Nebraska Corporation,

    Defendant.
_____/

FILED by ____ D.C.

JAN 14 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## COMPLAINT

Plaintiff Regions Bank ("Regions") sues Defendant Chicago Title Insurance Company ("Chicago Title") and avers:

### PARTIES, JURISDICTION, AND VENUE

1. Regions is a banking corporation organized and existing under the laws of Alabama and has its principal place of business in Alabama. Regions is a citizen of Alabama.

2. Chicago Title is a corporation organized and existing under the laws of Nebraska and has its principal place of business in Chicago, Illinois. Chicago Title is a citizen of Nebraska or Illinois.

3. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

5. Venue is appropriate in this district because (1) a substantial part of the events or omissions giving rise to the claim occurred here, and (2) Chicago Title regularly conducts business here.

## FACTS

### REGIONS' REAL PROPERTY INTEREST

6. On May 22, 2006, Michael Anthony Company, a New York General Partnership, sold to Palm Springs Town Homes, LLC ("Palm Springs") the following real property located in Palm Beach County, Florida (the "Property"):

> The South 3/8 of the Northwest Quarter of the Northwest Quarter of Section 8, Township 44 South, Range 43 East, less the West 50 feet thereof, Palm Beach County, Florida.

7. On May 23, 3006, in connection with its purchase of the Property, Palm Springs borrowed $26,350,000.00 from Regions. To evidence its debt, Palm Springs executed and delivered to Regions in Miami-Dade County, Florida certain promissory notes. To secure its debt, Palm Springs executed and delivered in Miami-Dade County, Florida a Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") on the Property, securing the principal obligation of $26,350,000.00 plus all other amounts owing under the loan documents. Regions recorded the Mortgage on May 24, 2006 in Official Records Book 20379, Page 272, of the Public Records of Palm Beach County, Florida.

### THE TITLE INSURANCE POLICY FROM CHICAGO TITLE

8. In connection with the mortgage loan transaction, Regions obtained from Chicago Title a Loan Policy of Title Insurance, number 72002-5801, effective May 24, 2006 (the "Policy") insuring Regions with respect to the Mortgage on the Property. A copy of the Policy is attached hereto as Exhibit A. Berman, Rennert, Vogel & Mandler, P.A. ("Berman, Rennert"),

counsel to Palm Springs, the borrower in the loan transaction with Regions, issued the Policy as Chicago Title's authorized agent.

9. The land referred to in the Policy is the Property.

10. The estate or interest in the land covered by the Policy is fee simple.

11. All required premiums under the Policy were paid.

### THE BILLBOARD LEASE ON THE PROPERTY

12. At the time of the issuance of the Policy, the Property was subject to a valid billboard lease between non-party Clear Channel Outdoor, Inc. ("Clear Channel"), and the then owner, Michael Anthony Company ("Billboard Lease").

13. Prior to the issuance of the Policy, both Chicago Title and its authorized agent, Berman, Rennert, were aware of the existence of the Billboard Lease. Chicago Title determined to insure the Mortgage on the Property despite the existence of the Billboard Lease. Accordingly, the Policy insures that the Mortgage constitutes a first lien on the Property and does not except out or exclude the Billboard Lease.

14. On December 11, 2007, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 2007-CA-016283 (the "Billboard Lease Action"), entered final judgment in an action, *inter alia*, for ejectment brought by Palm Springs against Clear Channel. In the final judgment, the court found that when Palm Springs purchased the Property, the Property was subject to the Billboard Lease, which was valid and enforceable. On October 22, 2008, the Fourth District Court of Appeal summarily affirmed the final judgment in the Billboard Lease Action.

15. Palm Springs defaulted under its loan with Regions. Accordingly, on May 30, 2008, Regions brought a foreclosure action against Palm Springs with respect to the Property

3

GARBETT, STIPHANY, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

under Case No. 2008-CA-015565 in Palm Beach County, Florida. Regions initially joined Clear Channel as a defendant to foreclose its interest in the Property by virtue of the Billboard Lease.

16. In the Foreclosure Action, Clear Channel defended by claiming to have a superior right to the Property under the Billboard Lease and pursuant to the final judgment entered in the Billboard Lease Action.

17. On June 13, 2008, Regions notified Chicago Title that Clear Channel was claiming an interest in the Property and requested that Chicago Title undertake the defense of Regions with respect to Clear Channel's claim. Chicago Title then appointed counsel to assist Regions' counsel in the Foreclosure Action.

18. Thereafter, with Chicago Title's knowledge, Regions determined that Clear Channel's interest in the Property was superior and dropped Clear Channel from the Foreclosure Action.

19. On October 2, 2008, the court in the Foreclosure Action entered a Final Judgment of Foreclosure. The Final Judgment of Foreclosure did not foreclose Clear Channel's interest in the Property.

20. The Foreclosure Action proceeded to a foreclosure sale, and on February 9, 2009, Regions purchased the Property via foreclosure sale and acquired a fee simple interest therein, but subject to the Billboard Lease.

21. The Policy insures Regions "against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which [Chicago Title] may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

   1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;

4

2. Any defect in or lien or encumbrance on such title;

3. Lack of a right of access to and from the land;

4. Unmarketability of such title;

5. The invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest except to the extent that such invalidity or unenforceability, or claim thereof, arises out of the transaction evidenced by the insured mortgage and is based upon

   (a) usury, or
   (b)
   (c) any consumer credit protection or truth in lending law;

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced Or is obligated to advance; or

8. The invalidity or unenforceability of any assignment, shown in Schedule A, of the insured mortgage or the failure of said assignment to vest title to the insured mortgage in the named insured assignee free and clear of all liens."

The existence of the Billboard Lease on the Property is within the above-quoted insurance coverage under the Policy.

22. Regions has made demand on Chicago Title to pay Regions its loss resulting from the existence of the Billboard Lease, but Chicago Title has failed to do so.

23. Chicago Title has breached the Policy by failing to pay Regions.

24. As a proximate result of Chicago Title's breach, Regions has incurred damages.

GARBETT, STIPHANY, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

25. Regions has retained the undersigned firm to represent it in this action and is obligated to pay a reasonable attorney's fee for services rendered.

26. Regions is entitled to recover reasonable attorney's fees against Chicago Title pursuant to § 627.428, Fla. Stat. (2009).

27. All conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, Regions demands judgment against Chicago Title for compensatory damages, plus costs, interest and reasonable attorney's fees under § 627.428, Fla. Stat. (2009), and such other relief as may be available to Regions.

Dated this 14th day of January, 2010.

GARBETT, STIPHANY, ALLEN & ROZA, P.A.
Attorneys for Regions
Brickell Bayview Centre, Suite 3100
80 S.W. 8th Street
Miami-Dade County, Florida 33130
Tel: 305-536-8861
Fax: 395-579-4722
Email: gstiphany@lbgslaw.com
       jperkins@lbgslaw.com

By: _____
Gary T. Stiphany
Florida Bar No. 342513
Joseph D. Perkins
Florida Bar No. 41875

V:\1302\477\Pleadings - Main Folder\Complaint.doc

# EXHIBIT A

Complaint

*Regions Bank v. Chicago Title Insurance Company*

U.S. District Court, Southern District of Florida

Case No. _____

*FORMERLY AMERICAN LAND TITLE ASSOCIATION*
*LOAN POLICY—1970*
*(Rev. 10-17-70 and 10-17-84)*

### Policy No. 72002- 5801

# CHICAGO TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
3. Lack of a right of access to and from the land;
4. Unmarketability of such title;
5. The invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest except to the extent that such invalidity or unenforceability, or claim thereof, arises out of the transaction evidenced by the insured mortgage and is based upon

    (a) usury, or

    (b) any consumer credit protection or truth in lending law;

6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance; or
8. The invalidity or unenforceability of any assignment, shown in Schedule A, of the insured mortgage or the failure of said assignment to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

*In Witness Whereof,* CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of the date of policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY

Issued By:

BERMAN, RENNERT, VOGEL & MANDLER
100 S.E. 2nd Street, 29th Floor
Miami, FL 33131

(305) 577-4177

By: _[signature]_ President

ATTEST

_[signature]_ Secretary

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy:

1. (a) Governmental police power.
   (b) Any law, ordinance or governmental regulation relating to environmental protection.
   (c) Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part.
   (d) The effect of any violation of the matters excluded under (a), (b) or (c) above, unless notice of a defect, lien or encumbrance resulting from a violation has been recorded at Date of Policy in those records in which under state statutes deeds, mortgages, lis pendens, liens or other title encumbrances must be recorded in order to impart constructive notice to purchasers of the land for value and without knowledge; provided, however, that without limitation, such records shall not be construed to include records in any of the offices of federal, state or local environmental protection, zoning, building, health or public safety authorities.

2. Rights of eminent domain unless notice of the exercise of such rights appears in the public records at Date of Policy.

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material).

4. Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

## CONDITIONS AND STIPULATIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness (reserving, however, all rights and defenses as to any such successor who acquires the indebtedness by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin or corporate or fiduciary successors that the Company would have had against the successor's transferor), and further includes (ii) any governmental agency or instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing said indebtedness, or any part thereof, whether named as an insured herein or not, and (iii) the parties designated in paragraph 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage hereunder.

(c) "knowledge": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of any public records.

(d) "land": the land described, specifically or by reference in Schedule A, and improvements affixed thereto which by law constitute real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": those records which by law impart constructive notice of matters relating to said land.

### 2. (a) CONTINUATION OF INSURANCE AFTER ACQUISITION OF TITLE

This policy shall continue in force as of Date of Policy in favor of an insured who acquires all or any part of the estate or interest in the land described in Schedule A by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage, and if the insured is a corporation, its transferee of the estate or interest so acquired, provided the transferee is the parent or wholly owned subsidiary of the insured; and in favor of any governmental agency or instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage; provided that the amount of insurance hereunder after such acquisition, exclusive of costs, attorneys' fees and expenses which the Company may become obligated to pay, shall not exceed the least of:

(i) the amount of insurance stated in Schedule A;

(ii) the amount of the unpaid principal of the indebtedness as defined in paragraph 8 hereof, plus interest thereon, expenses of foreclosure and amounts advanced to protect the lien of the insured mortgage and secured by said insured mortgage at the time of acquisition of such estate or interest in the land; or

(iii) the amount paid by any governmental agency or instrumentality, if such agency or instrumentality is the insured claimant, in the acquisition of such estate or interest in satisfaction of its insurance contract or guaranty.

CONDITIONS AND STIPULATIONS (Continued on page below inserts)

**LOAN FORM**
**CHICAGO TITLE INSURANCE COMPANY**
**SCHEDULE A**

| OFFICE FILE NUMBER | POLICY NUMBER | DATE OF POLICY | AMOUNT OF INSURANCE |
|---|---|---|---|
| 300603164 | 72002-5801 | May 24, 2006 at 8:35 a.m. | $26,350,000.00 |

1. Name of Insured:

   Regions Bank, an Alabama banking corporation

2. The estate or interest in the land which is covered by this Policy is:

   Fee Simple

3. Title to the estate or interest in the land is vested in the Insured.

   Palm Springs Town Homes, LLC, a Florida limited liability company

4. The land herein described is encumbered by the following mortgage or trust deed, and assignments:

   Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement dated May 23, 2006 and recorded May 24, 2006 in Official Records Book 20379, Page 272 of the Public Records of Palm Beach County, Florida, securing the original principal sum of $26,350,000.00.

5. The land referred to in this policy is described as follows:

   The South 3/8 of the Northwest Quarter of the Northwest Quarter of Section 8, Township 44 South, Range 43 East, less the West 50 feet thereof, Palm Beach County, Florida.

COUNTERSIGNED BY:

BERMAN RENNERT VOGEL & MANDLER, P.A.

By: _____
    Elaine M. Cohen, Esq.

## LOAN FORM
## CHICAGO TITLE INSURANCE COMPANY
## SCHEDULE B

Policy Number: 72002-5801

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes and assessments for the year 2006 and subsequent years, which are not yet due and payable.

2. Palm Beach County Resolution Fixing Set-Back Requirements recorded in Deed Book 1105, Page 616.

3. Easement rights set forth in General Permit granted to Southern Bell Telephone and Telegraph Company, recorded in Official Records Book 310, Page 64.

4. The rights of month to month tenants in possession under unrecorded or oral leases with no options to purchase the Property or any portion thereof.

5. The following matters shown by Survey Drawing No. 97-086.10, dated April 4, 2006 by Donald D. Daniels, Inc. and any easement rights, consequences or obligations associated therewith, to wit:

   a. Various fence encroachments along South property line and any rights associated therewith.

   b. Power line, power pole and guy anchor at Southeast corner of property, guy anchor across East property line, power lines and poles along and across westerly part of North property line into subject property and power lines, power poles and guy anchor along and over the North side of main building, lying outside of or without recorded easement.

   c. Right of way of Congress Avenue across the West .06 feet of subject property and any taking of title thereto pursuant to FS95.361, and ultimate right of way as per 1999 County Thoroughfare Plan.

   d. Encroachment of right of way of Asphalt turnabout and guard rail for Myrica Road at the Northeast corner of subject property and any taking of title thereto pursuant to FS95.361.

   e. Walled concrete catch box and 30" CMP running therefrom onto adjoining property near Northeast corner of subject property, located outside of or without recorded easement.

   f. Various Monitoring Wells, Sanitary Manholes, Southern Bell Box, Well Pump, Traffic Sign Pole, Signal Box located outside of or without recorded easement.

**LOAN FORM**
**CHICAGO TITLE INSURANCE COMPANY**
**SCHEDULE B, Continued**

Policy Number: 72002-5801

NOTE: Pending disbursement of the full proceeds of the loan secured by the mortgage described herein, this policy insures only to the extent of the amount actually disbursed plus interest accrued thereon, but increases automatically up to the face amount of the policy as disbursements are made in good faith and without knowledge of any new defects in, or objections to, the title which may take priority over the mortgage lien.

At the insured's request, title shall be continued down to the date of each disbursement and the Company, at the expense of the owner, shall furnish to the insured a title continuation report, to be followed by a standard construction loan up-date endorsement, which shall note any and all exceptions to title that may exist regardless of whether or not they specifically affect the priority of the insured mortgage, and which shall state, since the date hereof or since the date of the last preceding endorsement, whether any liens or encumbrances have been recorded and whether there are any additional title exceptions or objections.

NOTE: All of the recording information contained herein refers to the Public Records of Palm Beach County, Florida, unless otherwise indicated.

**LOAN FORM**
**CHICAGO TITLE INSURANCE COMPANY**
**SCHEDULE B - PART II**

Policy Number: 72002-5801

EXCEPTIONS FROM COVERAGE

In addition to the matters set forth in Section 1 of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinated to the lien or charge of the insured mortgage upon said estate or interest.

1. The rights of Michael Anthony Company under the terms of that certain Lease Agreement as dated May 22, 2006.

2. UCC-1 Financing Statement in favor of Regions Bank, an Alabama banking corporation, as Secured Party, and Palm Springs Town Homes, LLC, as Debtor, recorded May 24, 2006 in Official Records Book 20379, Page 295 of the Public Records of Palm Beach County, Florida.

END OF POLICY. ENDORSEMENTS TO FOLLOW.

## FLORIDA FORM 9 ENDORSEMENT
## Attached to Loan Policy No. 72002-5801
## Issued by
## CHICAGO TITLE INSURANCE COMPANY

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage by reason of:

1. Any incorrectness in the assurance that, at date of policy:

    (a) There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired;

    (b) Unless expressly excepted in Schedule B:

    (1) There are no present violations on the land of any enforceable covenants, conditions or restrictions nor do any existing improvements on the land violate any building setback lines shown on plat of subdivision recorded or filed in the public records.

    (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

    (3) There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.

    (4) There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

    (5) There are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public record.

2. Any future violation on the land of an existing covenant, condition or restriction occurring prior to the acquisition of the title to the estate or interest in the land, provided the violation results in:

    (a) Impairment or loss of the lien of the insured mortgage; or,
    (b) Loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements (excluding lawns, shrubbery or trees):

    (a) Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved.

    (b) Which results from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines on a plat or subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

DATED as of May 24, 2006

**BERMAN RENNERT VOGEL & MANDLER, P.A.**

_____
Authorized Signatory

Florida Form 9 (2/95)

# REVOLVING CREDIT ENDORSEMENT
## Attached to Policy No. 72002-5801
### Issued by
## CHICAGO TITLE INSURANCE COMPANY

Notwithstanding any terms or provisions in this policy to the contrary, the Company hereby insures the insured that advances made subsequent to the Date of Policy, but within 20 years of the Date of Policy, pursuant to the terms of the mortgage described in Schedule A of this policy, shall be included within the coverage of this policy, even though the principal indebtedness may have been reduced from time to time preceding any such subsequent advances. The Company's liability under this policy shall be reduced hereafter by the filing for record by the mortgagor or his successors in title of a notice pursuant to Section 697.04(1),F.S., limiting the maximum principal amount that may be so secured to an amount not less than the amount actually advanced at the time of such filing.

The Company further assures the insured that such subsequent advances shall have the same priority over liens, encumbrances and other matters disclosed by the Public Records, as do advances secured by the insured mortgage as of the Date of Policy, except for the following matters, if any, arising subsequent to the Date of Policy:

   a. Federal tax liens which may be recorded against the mortgagor(s) or their successors in title more than forty-five days prior to the making of any such subsequent advances.

   b. Federal tax liens which may be recorded against the mortgagor(s) or their successors in title within forty-five days of making any such subsequent advances, the existence of which are actually known to the insured prior to the making of any such subsequent advances.

   c. Ad valorem real estates taxes and assessments which are on a parity with ad valorem real estate taxes pursuant to Florida Statutes.

   d. Bankruptcies of the mortgagor(s) prior to the making of any such subsequent advances.

   e. Defects, liens, encumbrances or other matters, the existence of which are actually known to the insured prior to the making of any such subsequent advances.

The total liability of the Company under the policy and any endorsements therein shall not exceed, in the aggregate, the face amount of the policy and sums which the Company is obligated under the conditions and stipulations thereof to pay.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements are not changed.

DATED as of May 24, 2006

BERMAN RENNERT VOGEL AND MANDLER, P.A.

_____
Authorized Signatory

Endorsement
Revolving Credit

## SURVEY ENDORSEMENT
### Attached to Policy No. 72002-5801

### Issued by
### CHICAGO TITLE INSURANCE COMPANY

The Company hereby acknowledges the lands described in Schedule A are the same lands described in the survey prepared by Donald D. Daniels, Inc. dated April 4, 2006, however, the Company does not insure the accuracy or completeness of said survey.

The endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto, except that the insurance afforded by this endorsement is not subject to Section 3(d) of the Exclusions From Coverage. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsement, nor does it increase the face amount thereof.

DATED AS OF MAY 24, 2006

**BERMAN RENNERT VOGEL & MANDLER, P.A.**

_____
Authorized Signatory

ENDORSEMENT
Survey (Florida)
Reorder Form No. 3140

## VARIABLE RATE ENDORSEMENT

Attached to and forming a part of
Title Insurance Policy No. 72002-5801

Issued by
CHICAGO TITLE INSURANCE COMPANY

**ALTA ENDORSEMENT FORM 6 - VARIABLE RATE MORTGAGE**

The Company hereby insures against loss or damage by reason of:

1. The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2. Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the change in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto, except that the insurance afforded by this endorsement is not subject to Section 3(d) of the Exclusions From Coverage. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it increase the face amount thereof.

DATED as of May 24, 2006

BERMAN RENNERT VOGEL & MANDLER, P.A.

_____
Authorized Signatory

ALTA Endorsement - Form 6
Variable Rate Mortgage

**CONDITIONS AND STIPULATIONS (Continued)**

**(b) Continuation of Insurance after Conveyance of Title**

The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to such insured.

**3. DEFENSE AND PROSECUTION OF ACTIONS—NOTICE OF CLAIM TO BE GIVEN BY AN INSURED CLAIMANT**

(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or defenses, restraining orders or injunctions interposed against a foreclosure of the insured mortgage or a defense interposed against an insured in an action to enforce a contract for a sale of the indebtedness secured by the insured mortgage, or a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

(b) The insured shall notify the Company promptly in writing (i) in case any action or proceeding is begun or defense or restraining order or injunction is interposed as set forth in (a) above, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If such prompt notice shall not be given to the Company, then as to such insured all liability of the Company shall cease and terminate in regard to the matter or matters for which such prompt notice is required; provided, however, that failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then only to the extent of such prejudice.

(c) The Company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, and the Company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy.

(d) Whenever the Company shall have brought any action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any such litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(e) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured hereunder shall secure to the Company the right to so prosecute or provide defense in such action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such insured for such purpose. Whenever requested by the Company, such insured shall give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or defending such action or proceeding, and the Company shall reimburse such insured for any expense so incurred.

**4. NOTICE OF LOSS—LIMITATION OF ACTION**

In addition to the notices required under paragraph 3(b) of these Conditions and Stipulations, a statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within 90 days after such loss or damage shall have been determined and no right of action shall accrue to an insured claimant until 30 days after such statement shall have been furnished. Failure to furnish such statement of loss or damage shall terminate any liability of the Company under this policy as to such loss or damage.

**5. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS**

The Company shall have the option to pay or otherwise settle for or in the name of an insured claimant any claim insured against or to terminate all liability and obligations of the Company hereunder by paying or tendering payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred up to the time of such payment or tender of payment by the insured claimant and authorized by the Company. In case loss or damage is claimed under this policy by an insured, the Company shall have the further option to purchase such indebtedness for the amount owing thereon together with all costs, attorneys' fees and expenses which the Company is obligated hereunder to pay. If the Company offers to purchase said indebtedness as herein provided, the owner of such indebtedness shall transfer and assign said indebtedness and the mortgage and any collateral securing the same to the Company upon payment therefor as herein provided.

**6. DETERMINATION AND PAYMENT OF LOSS**

(a) The liability of the Company under this policy shall in no case exceed the least of:

(i) the actual loss of the insured claimant; or

(ii) the amount of insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in paragraph 2(a) hereof; or

(iii) the amount of the indebtedness secured by the insured mortgage as determined under paragraph 8 hereof, at the time of the loss or damage insured against hereunder occurs, together with interest thereon.

(b) The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon an insured in litigation carried on by the Company for such insured, and all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

(c) When liability has been definitely fixed in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter.

**7. LIMITATION OF LIABILITY**

No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, or the lien of the insured mortgage, as insured, within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured, as provided in paragraph 3 hereof; or (c) for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.

**8. REDUCTION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto; provided, however, such payments, prior to the acquisition of title to said estate or interest as provided in paragraph 2(a) of these Conditions and Stipulations, shall not reduce pro tanto the amount of the insurance afforded hereunder except to the extent that such payments reduce the amount of the indebtedness secured by the insured mortgage.

Payment in full by any person or voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in paragraph 2(a) hereof.

(b) The liability of the Company shall not be increased by additional principal indebtedness created subsequent to Date of Policy, except as to amounts advanced to protect the lien of the insured mortgage and secured thereby.

No payment shall be made without producing this policy for endorsement of such payment unless the policy be lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

**9. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage hereafter executed by an insured which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**CONDITIONS AND STIPULATIONS (Continued on Reverse Side)**

### CONDITIONS AND STIPULATIONS (Continued)

**10. SUBROGATION UPON PAYMENT OR SETTLEMENT**

Whenever the Company shall have settled a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant, except that the owner of the indebtedness secured by the insured mortgage may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness, provided such act occurs prior to receipt by the insured of notice of any claim of title or interest adverse to the title to the estate or interest or the priority of the lien of the insured mortgage and does not result in any loss of priority of the lien of the insured mortgage. The Company shall be subrogated to and be entitled to all rights and remedies which such insured claimant would have had against any person or property in respect to such claim had this policy not been issued, and if requested by the Company, such insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect such right of subrogation and shall permit the Company to use the name of such insured claimant in any transaction or litigation involving such rights or remedies. If the payment does not cover the loss of such insured claimant, the Company shall be subrogated to such rights and remedies in the proportion which said payment bears to the amount of said loss, but such subrogation shall be in subordination to the insured mortgage. If loss of priority should result from any act of such insured claimant, such act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against hereunder which shall exceed the amount, if any, lost to the Company by reason of the impairment of the right of subrogation.

**11. LIABILITY LIMITED TO THIS POLICY**

This instrument together with all endorsements and other instruments, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.

Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy.

No amendment of or endorsement to this policy can be made except by writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**12. NOTICES, WHERE SENT**

All notices required to be given the Company, and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to:

**Chicago Title Insurance Company**
**Claims Department**
**171 North Clark Street**
**Chicago, Illinois 60601-3294**

---

CHICAGO TITLE INSURANCE COMPANY
171 North Clark Street
Chicago, IL 60601-3294

POLICY OF TITLE INSURANCE

FORMERLY American Land Title Association Loan Policy—1970 (Rev. 10-17-70 and 10-17-84)