UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 10-CV-80043-RYSKAMP/VITUNAC

REGIONS BANK,

    Plaintiff,

v.

CHICAGO TITLE INSURANCE
COMPANY,

    Defendant.
_____/

## MEMORANDUM OPINION

**THIS CAUSE** comes before the Court on the non-jury trial held before the Court on January 11 and 12, 2011. The Court has carefully considered the arguments of counsel, the evidence presented, and the live testimony of expert witnesses Michael Slade and Michael Cannon and the other witnesses who testified at trial. The Court has also judged the credibility of all of the witnesses. Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law.

    **I.**    **Findings of Fact**[1]

Regions Bank ("Regions") is a banking corporation organized and existing under the laws of Alabama and has its principal place of business in Alabama. Chicago Title Insurance Company ("Chicago Title") is a corporation organized and existing under the laws of Nebraska and has its principal place of business in Jacksonville, Florida. The matter in controversy in this case exceeds $75,000.00, exclusive of interest and costs.

---

[1] To the extent that any of the Court's finding of fact may be deemed conclusions of law, the Court expressly incorporates them by reference into its conclusions of law section.

Regions sued Chicago Title for failing to honor Regions' claim on the Lender's policy issued by Chicago Title, insuring Regions' mortgage, for a loan of $26,350,000.00, to Palm Springs Town Homes, LLC ("Palm Springs"), which was a first lien on the unimproved real property located in Palm Beach County, Florida. Regions' claim for damages against Chicago Title derives from the existence of a title defect owing to a lease for a billboard on the property, on which Clear Channel Communications is the lessee. The presence of the Clear Channel billboard on the property, and its consequential influence on the value of the property as of February 9, 2009 (the date on which Regions acquired the property by foreclosure sale and the date that both parties agree is the effective valuation date for Regions' claim), is the focus of this case. Chicago Title's only defense in this case is that it believes that Regions did not suffer any damages as a result of the billboard leases, and that, under the title policy at issue, the lack of damages renders the alleged breach of the title policy immaterial and not actionable.

The Court finds that the billboard lease at issue encumbers the entire property and provides Clear Channel with the right to extend the lease through January 12, 2019. The lease provides that:

> The Lessor does hereby lease and demise to the Lessee, the entire plot or premises described as follows: 1200 S. Congress Avenue  Congress Av N/O Oak Rd In the City of West Palm Beach County: Palm Beach State: Florida for the term of Five (5) years, beginning on the 13th day of January, 1999 and ending on the 12th day of January 2004 at the yearly rental of six thousand dollars and no cents
> …
>
> ($6,000.00) plus sales tax payable in equal quarterly installments mailed to the Lessor. It being understood that this Lease shall continue in full force and effect for its like term and thereafter for subsequent successive like terms, no to exceed three subsequent like terms, unless terminated at the end of such term or any successive like term upon written notice by the Lessee served thirty (30) days before the end of such term or subsequent like term . . ..

The lease gives Clear Channel the right to permit third parties to place advertising signs on the property and grants to Clear Channel the right to assign any rights under the lease to any financially responsible third parties.

On May 23, 2006, in connection with its purchase of the subject property, Palm Springs borrowed $26,350,000.00 from Regions. As evidence of the debt, Palm Springs executed and delivered to Regions certain promissory notes. To secure the debt, Palm Springs executed a Florida Real Estate Property Mortgage, Assignment of Leases and Rents and Security Agreement on the property. The mortgage secured the principal obligation of $26,350,000.00 plus all other amounts owing under the loan documents. Regions recorded the mortgage on May 24, 2006 in the Official Records Book 20379, Page 272 of Public Records of Palm Beach County, Florida.

Regions obtained an title insurance policy from Chicago Title in connection with the mortgage on the property. The land referred to by the legal description on "Loan Form Chicago Title Insurance Company Schedule A" in the policy is the property at issue, which bears the following street address: 1200 South Congress Avenue, Palm Springs, Florida 33406. All required premiums under the policy have been paid. The policy insures Regions "against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees, and expenses which [Chicago Title] may become obligated to pay hereunder, sustained or incurred by the insured by reason of . . . [t]he priority of any lien or encumbrance over the lien of the insured mortgage . . .." The existence of the billboard lease is within the above-quoted insurance coverage.

Prior to the issuance of the policy, both Chicago Title and its authorized agent, Berman, Rennert, were aware of the existence of the lease. Despite its knowledge and the existence of the

3

lease, Chicago Title issued the insurance policy on the mortgage. The policy insures that the mortgage constitutes a first lien on the property and does not exclude the lease.

On December 11, 2007, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida entered final judgment in favor of Clear Channel in case number 2007-CA-016283, which was an ejectment action brought by Palm Springs against Clear Channel. In the judgment, the court found that when Palm Springs purchased the property, the property was subject to the lease, which was valid and enforceable. On October 22, 2008, the Fourth District Court of Appeal summarily affirmed the judgment of the trial court.

In the meantime, Palm Springs defaulted on its loan with Regions. On May 30, 2008, Regions brought a foreclosure action against Palm Springs in case no. 2008-CA-015565 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County. Regions initially joined Clear Channel as a defendant to foreclose its interest in the property. In the foreclosure action, Clear Channel argued that it had a superior right to the property under the lease and pursuant to the final judgment entered in the billboard lease action. On June 13, 2008, Regions notified Chicago Title that Clear Channel was claiming an interest in the property and requested the Chicago Title undertake the defense of Regions with respect to Clear Channel's claim. Chicago Title appointed counsel to assist Regions' counsel in the foreclosure action. Shortly thereafter, with Chicago Title's knowledge, Regions determined that Clear Channel's interest in the property was superior and dropped Clear Channel from the foreclosure action. On October 2, 2008, the court entered a final judgment of foreclosure. The final judgment of foreclosure did not foreclose Clear Channel's interest in the property. The foreclosure action proceeded to a foreclosure sale, and on February 9, 2009, Regions purchased the property at a foreclosure sale and acquired a fee simple interest therein, subject to the billboard lease.

After Regions acquired the property, Regions made a demand on Chicago Title to pay Regions its loss resulting from the existence of the billboard lease totaling $600,000.00. Chicago Title refused to immediately pay Regions' claim. In response to Regions claim, Chicago Title issued an opinion letter of February 24, 2010, which stated in part, that it is Chicago Title's "opinion that [Regions'] Claim is covered by the Loan Policy, subject to a [determination] of what damage, if any, [Regions] has suffered as a result of [Regions'] Claim, which may be nothing, and if so, then [Loan Policy] exclusion 3(c) would apply to deny payment on [Regions'] Claim." In their second joint stipulation filed with the Court, the parties agreed that they would present the Court with competing expert reports and testimony regarding the value of the subject property on February 9, 2009.

Regions' expert witness in this case is Michael R. Slade, MAI, SRA, CRE, of Callaway & Price, Inc., Real Estate Appraisers and Consultants and Licensed Real Estate Brokers. Mr. Slade's expert qualifications include thirty-five years as an appraiser, during which he has acted as a special master/magistrate for tax appeal hearings in Palm Beach County. Mr. Slade appraised the property. Mr. Slade testified that the highest and best use of the property, as of February 9, 2009, was for future residential development, including the approved Springs project, the townhome project that had been planned by Palm Springs and authorized by the Village of Palm Springs. The project was never completed. Mr. Slade's expert opinion is also that the principal amount of Regions' compensatory damages, as a result of the existence of the billboard lease as of February 9, 2009, is $600,000.00. Mr. Slade's opined that the market value of the property without the lease on February 9, 2009 was $5,900,000. With the billboard lease, the market value of the property was $5,300,000.00. Mr. Slade also testified that the property, on February 9, 2009, was an ideal site for land banking.

Chicago Title offered the testimony of Mr. Michael Cannon as its expert witness. Mr. Cannon is a Florida State Certified General Real Estate Appraiser and a Licensed Real Estate Broker. Mr. Cannon is the executive director of Integra Realty Resources—Miami, which is a national real estate consulting and valuation firm with over 55 offices in 36 states. Mr. Cannon has over forty years experience in market analysis, land use analysis, and valuation of ownership interests in all types of real estate.

In his report and in his testimony at trial, Mr. Cannon asserts that the market value of the parcel with and without the billboard is immaterial. In other words, the presence of the billboard has no affect on the market value of the property. Mr. Cannon also critiqued Mr. Slade's methodology and his ultimate conclusion. Specifically, Mr. Cannon asserted that Mr. Slade's methodology was flawed and unreliable because the properties used as points of comparison were not comparable under governing principles of appraisals, the percentages used in calculations were unsupported by any empirical evidence, and the data he used in his calculations was based on bare speculation and mere presumptions. Mr. Cannon asserts that the Springs Project was never financially feasible, and therefore, it could not be the "highest and best use" of the property. This, in Mr. Cannon's view, demonstrates that Mr. Slade's entire analysis is fatally flaw. Because there were other more viable development options available, the Springs Project was not the highest and best use for the property. Further, Mr. Cannon asserted that, if anything, the billboard lease on the property increases its value because it generates income.

## II.     Conclusions of Law[2]

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) and venue is appropriate in this judicial district because (1) a substantial part of the events or

---

[2] To the extent that any of the Court's conclusions of law may be deemed to be findings of fact, the Court expressly incorporates them by reference into the findings of fact section.

omissions giving rise to the claim occurred here, and (2) Chicago Title regularly conducts business in this district. A court sitting in diversity applies the choice of law analysis of the forum state. *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F.3d 1317, 1318 (11th Cir. 2004). Florida law applies to this matter.

To prevail on a claim for breach of contract, Regions must prove the existence of a valid contract, a material breach of that contract, and damages. *Beck v. Lazard Freres Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999). Title insurance policies are subject to the same rules of construction which apply to other types of insurance policies. *McDaniel v. Lawyers' Title Guaranty Fund*, 327 So. 2d 852 (Fla. 2d DCA 1976).

Chicago Title admits Regions' claim for breach of contract is covered under the policy. Accordingly, the Court must determine the amount of damages, if any, that Regions suffered as a result of the existence of the encumbrance on the property. Under Florida law, the measure of damages under the policy is the difference of value of the property with and without the billboard lease as of the date Regions acquired the property at foreclosure (February 9, 2009). *See Florida Home Ins. Co. v. Braverman*, 163 So. 2d 512, 513 (Fla. 3d DCA 1964) (quoting *Goode v. Federal Title and Ins. Corp.*, 162 So. 2d 269 (Fla. 2d DCA 1964)). In determining damages, the Court must also examine the "highest and best use" of the property as of February 9, 2009. *See Bohr v. First Am. Title Ins. Co.*, Nos. 07-CV-741-J-32MCR, 07-CV-745-J-32HTS, 2008 WL 2977353, *6-7 (MD Fla. July 30, 2008).

Each side argues that the other's expert witness should be excluded because their testimony does not meet the standards of Federal Rule of Evidence 702. The trial court "has broad discretion in determining whether to admit or to exclude expert testimony." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993). "Expert testimony is admissible

7

if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert v. Merrill Dow Pharm., Inc.* 509 U.S. 579 (1993); and the testimony assists the trier of fact, through the application of specialized expertise, to understand the evidence or to determine a fact in issue." *Falic v. Legg Mason Wood Walker, Inc.*, No. 03-CV-80377, 2005 WL 5955704, *1 (S.D. Fla. Jan. 10, 2005) (citing *Quiet Tech. DC-8 v. Hurrel-Dubois UK, Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003)).

After considering the arguments and the relevant legal standards, the Court accepts both Mr. Slade and Mr. Cannon as qualified expert witnesses in this case. Clearly, both are, based on their knowledge, skill, experience, training, and education, qualified real estate appraisers and are competent to offer testimony regarding real estate appraisal. Their testimony will no doubt aid the trier of fact—in this case, the Court—to understand the evidence and to determine a fact in issue. At trial, the testimony of each was based on sufficient facts and data, the testimony was a product of reliable principles and methods, and each applied the principles and methods reliably to the facts of this case. Finally, the Court is convinced that in basing their testimony on professional testimony and personal experience, each has employed in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in their field. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

While the Court accepts both witnesses as experts, the Court finds Mr. Slade's testimony and report to be more credible and persuasive than Mr. Cannon's. In the Court's view, it defies common sense to say that a lease does not diminish the market value of a property when the lease encumbers the entire property. Mr. Slade testified that the highest and best of this property was future residential development, including the Springs project, a high density residential

development, while Mr. Cannon offers no opinion as to what the highest and best use of the property was on February 9, 2009. The Court finds that, based on the evidence presented at trial, the highest and best use of the property, as Mr. Slade testified, is some sort of future residential development. Such a project, or any project for that matter, would be impossible without the permission of the lessee due to the billboard lease encumbering the entire property. The lessee has the ability to eject those who trespass over the property. Chicago Title asserts that Mr. Slade's testimony is based on nothing but mere speculation. The Court disagrees. After reviewing his report and hearing his testimony, and recognizing that the appraisal process is often more art than a science, the Court is convinced of the soundness of Mr. Slade's methodologies and of the credibility of his testimony.

Regions seeks $600,000.00 in damages based on Mr. Slade's opinion that the market value of the property was diminished by ten percent due to the billboard lease. Mr. Cannon testified that it was not diminished at all. Accepting the process and methodology by which Mr. Slade arrived at that number and finding his testimony to be credible, the Court chooses Mr. Slade's valuation.[3] Accordingly, the Court finds that on February 9, 2009, the difference between the value of the property with and without the billboard lease was at least $600,000.00, which is the amount of the policy and the amount of damages which Regions seeks.

Pursuant to § 627.428 of the Florida Statutes, Regions is entitled to its reasonable attorneys' fees and costs. Within ten days from the entry of this order, Regions shall file a motion for attorneys' fees and costs, which conforms with the Local Rules of the Southern District of Florida.

### III. Conclusion

---

[3] As noted at the trial, the diminution in value was likely more than 10% due to the fact that the lease encumbers the entire property. However, Regions' expert testified that the value was diminished by only 10% and the Court accepts that amount.

The Court has carefully considered all of the evidence, the parties' arguments, the testimony of all of the witnesses, applicable law, and pertinent portions of the record. For the foregoing reasons, the Court finds in favor of the plaintiff Regions Bank in the amount of $600,000.00 in addition to pre-judgment interest at the variable rate set by the Florida Chief Financial Officer pursuant to Florida Statute § 55.03(1), from February 9, 2009 through and including the date of the Court's entry of final judgment. The Court will enter final judgment by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 17 day of February, 2011.

/s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE